# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        Plaintiff,

                              **Case No. 05-CR-141**

v.

**JUAN ROMERO VEGA-ANGIANO,**
a/k/a Gilbert Ray Medrano,
a/k/a Gilberto Ray Medrano,
a/k/a Jose Vega-Angiano,
a/k/a Vega Lopez-Romero,
a/k/a Jose Romero Vega-Vega,

        Defendant.

## RECOMMENDATION TO THE HONORABLE CHARLES N. CLEVERT ON THE DEFENDANT'S MOTION TO SUPPRESS

        On May 24, 2005, the grand jury returned a two-count indictment against the defendant, Juan Romero Vega-Angiano ("Vega-Angiano"), charging him with falsely representing himself to be a citizen of the United States and making a false statement in a matter within the jurisdiction of the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("BICE").

        Vega-Angiano has filed a motion to suppress the statements specified in the indictment, claiming that they were given during custodial interrogation without the warnings set forth in <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). This court conducted an evidentiary hearing to address Vega-Angiano's motion to suppress on August 22, 2005. Vega-Angiano appeared in person and by his

counsel, Attorney Calvin R. Malone of the Federal Defender Services of Wisconsin, Inc. The government appeared by Assistant United States Attorney Tracy M. Johnson. The post-hearing pleadings on the motion to suppress are now closed, and the motion is ready for resolution.

**EVIDENTIARY HEARING TESTIMONY**

Appearing and testifying at the evidentiary hearing were Dodge County Jail Corrections Officer Nicole Seitz ("Officer Seitz"), BICE Special Agent Thomas R. Moore ("Agent Moore"), and BICE Special Agent Richard Hanson ("Agent Hanson"). Officer Seitz testified regarding her interaction with Vega-Angiano during the booking process and Vega-Angiano's ability to understand English. Agent Hanson testified regarding the BICE procedures used to interview a defendant who was charged in this district as an alien who entered the country illegally, in violation of 8 U.S.C. § 1325(a)(2). Agent Moore was the only witness to testify regarding the April 19, 2005 interview during which Vega-Angiano made the allegedly false statements specified in the indictment. Accordingly, the court's summary of the relevant events is based on the testimony of Agent Moore, and testimony of the other officers will be discussed herein where relevant.

I. Pre-interview Investigation

Agent Moore became involved in this case when a House of Corrections officer notified him that there was conflicting information as to the citizenship of a prisoner known as Gilberto Ray Medrano. (Tr. 22, 55.). By conducting a criminal history check on the name Gilberto Ray Medrano, Agent Moore uncovered a number of aliases, including the name Jose Vega-Angiano. That name was connected to a BICE alien file that Agent Moore requested for further review. Portions of the alien file included (1) the most recent BICE form I-213, which contains biographical information gathered during the last removal proceeding, (2) an order of removal, and (3) an order to show cause that was

2

presented in conjunction with the previous removal. (Tr. 55-56.). From this information, Agent Moore found that Vega-Angiano was removed to Mexico prior to being convicted of burglary, used thirty different aliases, was arrested thirty-two times, used ten different date of births, and was convicted of fourteen crimes. (Tr. 41-43.). Five of the convictions were prior to his removal, but did not involve an aggravated felony. (Tr. 58, 60.).

Before the interview, based on all of the information reviewed from the alien file, Agent Moore testified that he believed Vega-Angiano's presence in the country would constitute a number of criminal offenses. (Tr. 41, 56-57.). First, because Vega-Angiano would have illegally reentered the country after being removed, Agent Moore believed that Vega-Angiano would be subject to prosecution under 8 U.S.C. § 1326. (Tr. 24.). In addition, Agent Moore testified that an alien such as Vega-Angiano who enters the country without inspection commits a criminal offense, regardless of whether he has previously been removed. (Tr. 41.); see 8 U.S.C. § 1325. Moreover, Agent Moore testified that certain false statements are criminal under the statutes set forth in the indictment and that he believes aliens frequently lie to him about their identity. (Tr. 30, 58.).

Despite the foregoing, Agent Moore stated that he did not believe prosecution would result from his interview with the unidentified prisoner, even if the prisoner was discovered to be Vega-Angiano. According to Agent Moore, the policy of the United States Attorney's Office in this district is to pursue charges against only those aliens that re-enter the country after being convicted of an aggravated felony. (Tr. 24, 40.). That was not the case with regard to the unidentified prisoner, who is now alleged to be Vega-Angiano.

II. Vega-Angiano Interview

Agent Moore began the interview with the prisoner by identifying himself as a BICE agent, stating that he wanted to discuss the prisoner's immigration status, and advising the prisoner that any statement must be given freely and voluntarily. Agent Moore did not explain that the prisoner was free to leave or that the prisoner need not speak with him. (Tr. 50.). In addition, Agent Moore never administered <u>Miranda</u> warnings. (Tr. 51.). The prisoner responded by saying that he understood Agent Moore and was willing to answer his questions. (Tr. 26-27; Hrg. Ex. 1.). The prisoner then went on to tell Agent Moore that his true name was Gilberto Ray Medrano, that he was born in California, and that he was a United States citizen. (Tr. 27.). The indictment alleges that those statements are false and that the prisoner is Vega-Angiano.

To reconcile his claim of being a United States citizen with the known removal proceedings, the prisoner told Agent Moore that he previously used an alias and claimed to be an illegal alien without a green card. This led to the prisoner's removal. However, the prisoner said that removal was preferable to him at the time because there were outstanding arrest warrants under his true name. (Tr. 28.). Agent Moore found the prisoner's statements credible. According to Agent Moore, officers commonly remove persons to Mexico instead of charging them with an offense. Alternatively, in effort to conserve prison costs, convicted aliens might serve a short sentence and then be removed to Mexico before their sentence has expired. (Tr. 28-29.).

Ultimately, based on the amount of detail that the prisoner gave about his social security number, his parents' names, his education in the United States, where he was born, and the explanation for his previous removal, Agent Moore believed the prisoner. (Tr. 32.). Accordingly, hoping to avoid erroneously removing a United States citizen a second time, Agent Moore declined

4

from serving the prisoner with the reinstatement of the Vega-Angiano order of removal. (Tr. 33, 58-59.).

### III. Identity Investigation

After the interview concluded, Agent Moore investigated the identity and background information that the prisoner provided. By contacting the Social Security Administration, Agent Moore found that the name, place of birth, date of birth, social security number, and parents' names that the prisoner gave matched the name Gilberto Ray Medrano. However, the social security number itself was associated with fraud.

Agent Moore then contacted the person named Gilberto Ray Medrano ("Medrano") listed as the fraud victim in the Social Security Administration file. Medrano told Agent Moore that he knew the person who was using his social security number and that the fraud has been going on for about fifteen years. (Tr. 59-60.); see also Hrg. Ex. 4 at 3. In addition, Medrano said that he has not been able to get social security income, has had trouble with jobs, and has had difficulties obtaining credit because reports indicate that he has a long criminal history and a record of defaulting on loans. (Id.). A fax from Medrano consisting of his birth certificate, the birth certificate of the person who has been using his social security number, and a report filed with the Social Security Administration confirmed his allegations of fraud. At that point, Agent Moore believed that the prisoner had lied to him and was Vega-Angiano, the person who committed identity theft against Medrano. (Tr. 35.).

Accordingly, Agent Moore returned to the House of Correction and served the prisoner with Form I-871, Notice of Intent/Decision to Reinstate Prior Order [of removal]. (Tr. 36). In addition, in light of the severe impact that Vega-Angiano's identity theft had on Medrano's life, Agent Moore

5

decided to present this case for prosecution even though he has never done so in the past after learning that an alien lied to him. (Tr. 59-60.).

## POSITION OF THE PARTIES

Vega-Angiano claims that his statements to Agent Moore should be suppressed because they were made during "custodial interrogation" and were not preceded by Miranda warnings. The government concedes that Vega-Angiano was "in custody" at the time of his interview with Agent Moore and claims that the motion to suppress should be denied strictly because Agent Moore did not initially believe that Vega-Angiano would be prosecuted for his statements. According to the government, this frame of mind is critical because it precludes a finding that Vega-Angiano was subjected to interrogation.

## FIFTH AMENDMENT "INTERROGATION" STANDARDS

Miranda warnings are required only when an accused is both "in custody" and subject to "interrogation." United States v. Saadeh, 61 F.3d 510, 519 (7th Cir. 1995); United States v. Salyers, 160 F.3d 1152, 1159 (7th Cir. 1998). Because the government concedes that Vega-Angiano was in custody during his interview with Agent Moore, the court will focus on the interrogation requirement. The term "interrogation" includes any words or actions on the part of the police, other than those normally attendant to arrest or custody, that the police should know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 301 (1980); United States v. Johnson, 415 F.3d 728, 731 (7th Cir. 2005); United States v. Westbrook, 125 F.3d 996, 1002 (7th Cir. 1997). Therefore, the test for determining whether officers are interrogating a suspect is "whether a reasonable objective observer would believe that the encounter was 'reasonably likely to elicit an incriminating response from the suspect' and therefore constituted the 'functional equivalent'

6

of interrogation." Killebrew v. Endicott, 992 F.2d 660, 663 (7th Cir.1993)(quoting Innis, 446 U.S. at 300-01).

**ANALYSIS**

With these standards in mind, the court concludes that the questions that Agent Moore asked Vega-Angiano were likely to elicit an incriminating statement and should have been preceded by Miranda warnings. The government's chief contention is that Agent Moore did not believe that prosecution would follow from his interview, even if the person he spoke with was Vega-Angiano. This belief is substantiated by the fact that Agent Moore used BICE forms that are used for administrative purposes and not when there is a possibility of criminal prosecution. (Tr. 18-19, 74.).

However, Agent Moore's belief regarding the possibility for prosecution is distinct from whether Miranda warnings are required. The decision to prosecute, made by persons other than Agent Moore, depends on a variety of factors—i.e., the strength of the government's case; the likelihood that the accused has a viable affirmative defense; the prosecuting authority's caseload; the availability of key witnesses; or, as in the present case, the prosecuting authority's policy of pursuing certain offenses and not others. The purpose of Miranda warnings is to allow a suspect to make an informed decision as to whether he should voluntarily speak with officers when there is a risk of incrimination. The considerations that result in prosecution may be unknown to an accused at the time of his statement. Moreover, as demonstrated by the pending charges and by the testimony of Agent Hanson regarding the prosecution of another defendant in this district, the general policies of the prosecuting authority may change. Prosecution considerations aside, Miranda warnings do not depend on the likelihood of *prosecution*, but whether there is a likelihood of *incrimination*.

7

Case 2:05-cr-00141-CNC   Filed 12/22/05   Page 7 of 9   Document 25

In that regard, it is important to note that prior to the interview, Agent Moore had reason to believe that the person he would be speaking with was Vega-Angiano. In addition, Agent Moore knew that Vega-Angiano had an extensive criminal history, used numerous identities, and was previously removed to Mexico. Agent Moore knew that Vega-Angiano's presence in the country would constitute at least two criminal offenses: (1) illegal reentry after removal and (2) entry without inspection. Agent Moore also believed that aliens he interviews frequently lie to him about their identity. That belief, considered in conjunction with the many aliases used by Vega-Angiano, creates a reasonable likelihood that the prisoner, who might be Vega-Angiano, would give false information regarding his identity to Agent Moore, in violation of the code sections now set forth in the indictment. Thus, any conversation between Agent Moore and Vega-Angiano about his identity—whether truthful or untruthful—would unavoidably result in an incriminating statement. That level of certainty is appreciably greater than what is required to trigger the protections of Miranda. In other words, only if Agent Moore was certain that the prisoner was not Vega-Angiano would the prisoner not be likely to incriminate himself.

Under the attendant circumstances, Agent Moore had the following options: he could preserve the opportunity for criminal prosecution by advising the prisoner of the Miranda warnings, even if he did not think the incriminating statement would be the type that is commonly pursued in this district; **or** he could interview the person without administering Miranda warnings and forego the opportunity for prosecution if that person turned out to be Vega-Angiano. Agent Moore chose the latter. Whether Agent Moore fully appreciated the implications of his choice is not determinative when placed in the present context of protecting a potential defendant's constitutional rights. The incriminating statements that Vega-Angiano made to Agent Moore during the April 19, 2005 custodial interrogation

8

were obtained in violation of Vega-Angiano's Fifth Amendment rights. Accordingly, the court will recommend that Vega-Angiano's motion to suppress be **granted.**

**IT IS THEREFORE RECOMMENDED** that Vega-Angiano's motion to suppress be **granted.**

Your attention is directed to 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Criminal Procedure 59 (b)(2), and General Local Rule 72.3 (E.D. Wis.); whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

Dated at Milwaukee, Wisconsin, this 22nd day of December 2005.

s/AARON E. GOODSTEIN
United States Magistrate Judge